O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6839 ODW (SSx) | Date | November 30, 2009 |
|---|---|---|---|
| Title | *Terry S. Kitaguchi v. County of Ventura Dep't of Airports* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | |
|---|---|---|
| Raymond Neal | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (IN CHAMBERS):** **Defendant's Motion for Summary Judgment [24]**

Pending before the Court is Defendant County of Ventura Department of Airport's ("Defendant") Motion for Summary Judgment as to the claims raised in Plaintiff Terry Kitaguchi's ("Plaintiff") complaint. Plaintiff alleges discrimination in employment on the basis of race and age, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq* ("ADEA"). Plaintiff also alleges a claim for retaliation in violation of Title VII. Having reviewed the parties' submissions in favor of and in opposition to the instant Motion, including those arguments advanced at the November 30, 2009 hearing, and for the reasons noted below, Defendant's Motion is GRANTED.

**I. BACKGROUND**

Plaintiff was initially hired by the Ventura County Department of Airports on February 17, 2004, as an Airport Operations Officer. (PUF[1] 1.) His job duties included performing airport and aircraft inspections, security patrol, and monitoring airport and aircraft radio frequencies. (PUF 2.) Management or supervision of other employees were not a part of Plaintiff's job description. (PUF 2.)

Plaintiff was 44 years of age when hired. (PUF 1.) On three separate occasions, Plaintiff applied and interviewed for a promotion within the department. The first, in September 2005, was

---

[1] The Court cites to Plaintiff's Separate Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment [Dkt. 32].

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6839 ODW (SSx) | Date | November 30, 2009 |
|---|---|---|---|
| Title | *Terry S. Kitaguchi v. County of Ventura Dep't of Airports* | | |

for the position of Deputy Director of Airports–the second-highest position in the department. (PUF 3.) Plaintiff did not get the job. (PUF 5.) In December 2005, Plaintiff applied and interviewed for the Camarillo Airport Manager position. (PUF 6.) Plaintiff did not get the job. (PUF 6.) Finally, Plaintiff applied and interviewed for the Oxnard Airport Manager position in April 2006. (PUF 10.) Again, Plaintiff did not get the job. (PUF 11.) On all three occasions the person ultimately selected was a Caucasian male, between 25 and 35 years of age. (Kitaguchi Decl, Exh. D at 303-05.)

In July 2006, an investigation was conducted in response to sexual harassment allegations against Plaintiff by two female employees of Signature Flight Support, an aeronautical business and tenant at Oxnard Airport. (SUF 20-22.) Because of the nature of the complaints, on July 18, 2006, Defendant placed Plaintiff on paid administrative leave. (SUF 22.) Though disputed, according to Defendant, the investigation conducted concluded that the sexual harassment incidents, as described by the two Signature Flight employees, actually occurred. (SUF 23; McNamee Decl. ¶ 11.) As a result of this determination, Plaintiff was terminated on December 15, 2006. (McNamee Decl. ¶ 11.) Plaintiff's inexcusable neglect of duty, discourteous treatment of the public, and acts inimical to the public service were among the reasons for termination. (McNamee Decl., Exh. 6.)

Plaintiff alleges discrimination in employment on the basis of race and age, in violation of Title VII and the ADEA. Plaintiff also alleges a claim for retaliation in violation of Title VII.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to demonstrate the absence of any "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A material fact is one that could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The nonmoving party then has the burden to show the existence of a genuine issue for trial beyond the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

Only genuine disputes–where the evidence is such that a reasonable jury could return a

verdict for the nonmoving party–over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541 (1999) (quoting *Anderson*, 477 U.S. at 255). However, "it is not [the task] of the district court, to scour the record in search of a genuine issue of triable fact. [The courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate reference so that it could be conveniently found.").

### III.  DISCUSSION

#### A.  Plaintiff's Discrimination Claims

On a defendant's motion for summary judgment, claims of race, national-origin, and age discrimination under Title VII and the ADEA are evaluated pursuant to the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). Under the *McDonnell Douglas* framework, "the burden of production first falls on the plaintiff to make out a prima facie case of discrimination." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005).

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably than he was.[2] *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). Plaintiff's prima facie case requires only a minimal showing. *Coghlan*, 413 F.3d at 1094.

Once the plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision." *Leong*, 347 F.3d at 1124. Although the burden of production shifts, the burden of proof remains with the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If the employer provides a nondiscriminatory reason, "the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination." *Leong*, 347 F.3d at 1124. To demonstrate that the stated reason is a pretext for discrimination the plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658-59 (9th Cir. 2002).

---

[2] Though the ADEA requires the same analysis, it is phrased slightly different. "To establish a prima facie case of age discrimination through circumstantial evidence, the plaintiff must show that he was: (1) a member of a protected class [age 40 or older]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).

### 1.     Promotions

Plaintiff claims he was discriminated against on the basis of his race and age when he was not promoted on three separate occasions. For purposes of this Motion, the Court assumes (and Defendant does not contest) that Plaintiff could establish a prima facie case of discrimination.[3] Nevertheless, if Plaintiff offers no evidence to rebut Defendant's legitimate, nondiscriminatory reasons for not promoting him and for terminating him, Defendant is entitled to summary judgment.

Defendant contends it had a legitimate reason to not promote Plaintiff, on all three occasions, because other applicants were better qualified and because Plaintiff, on at least one occasion, became confrontational and asked inappropriate questions. (McNamee Decl. ¶¶ 6-9.) Defendant has presented evidence that the individual who was promoted to the Deputy Director position in September 2005 "met all the requirements for the position," including having the highest level of airport responsibility and knowledge of airport policies, with budgeting experience and good relationships with airport tenants. (McNamee Decl. ¶ 6.) Further, in December 2005, Defendant contends that Plaintiff was not promoted to the Camarillo Airport Manager position because he did not have the requisite "people skills" required for the position. (McNamee Decl. ¶ 7.) The person selected, Aaron Walsh, on the other hand, possessed all of the requirements, including a bachelor's degree in airport management, was Airport Certified with previous experience working with the National Transportation Safety Board, and interviewed very well for the position. (McNamee Decl. ¶ 8.) Similarly, with respect to the April 2006 Oxnard Airport Manager position, Plaintiff was not given the job because of his allegedly poor interview performance and less-than-required knowledge, ability and people skills, as they relate to airport management. (McNamee Decl. ¶ 9.) The winning candidate, Patrick Lammerding, had the requisite educational background and prior work experience with a major airline. (McNamee Decl. ¶ 9.) Thus, on all three occasions, Defendant chose the person whom it believed to be the more qualified applicant. Accordingly, Defendant has presented legitimate, non-discriminatory reasons as to why Plaintiff was not selected. *See e.g., Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1275-76 (9th Cir. 1981) (choosing to promote a better qualified applicant is a legitimate, non-discriminatory reason for denying a promotion unless it is a pretext for discrimination).

Plaintiff attempts to provide evidence that Defendant's stated reasons are pretext for

---

[3] For example, Plaintiff is of Asian descent, and was at least forty years of age at the times he was not promoted. *See* 42 U.S.C § 2000e-2(a)(1) (Title VII); 29 U.S.C. § 631(a) (ADEA). Defendant does not dispute that Plaintiff was qualified, in most respects, for the positions he applied to. Plaintiff was among the "top" candidates in most cases but, according to Defendant, was not the "most" qualified and, often times, interviewed poorly. Further, Plaintiff appears to be qualified for the position he held, as evinced in part by being selected to interview for all of the positions he applied to, and by receiving the 2006 first quarter "High Flyer Award," which is similar to an "employee of the month" award, given on a quarterly basis to airport employees. (Mot. at 4; Kitaguchi Decl. ¶ 6.) Plaintiff suffered an adverse employment action when he was not promoted, when he was placed on administrative leave on July 18, 2006, and when his employment at the Department of Airports was terminated on December 15, 2006. *See Brooks v. City of San Mateo*, 229 F.3d 917, 918 (9th Cir. 2000) ("Among those employment decisions that constitute an adverse employment action are termination, . . . and refusal to consider a promotion."). Finally, as noted above, on all three occasions, Plaintiff was denied a promotion in favor of a Caucasian male under 40 years of age. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (noting that the fourth element is satisfied if the employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff).

discrimination.  Contrary to Mr. McNamee's[4] declaration that other applicants were more qualified and that, in most cases, Plaintiff's interviewing skills were not the best, Plaintiff submits his own self-serving declaration and deposition testimony stating that none were more qualified than he.  For example, Plaintiff disputes that Chris Hastert was more qualified for the Deputy Director position because "Mr. Hastert was less qualified than myself" and "possessed little management experience, and far less education than me."  (Kitaguchi Decl. ¶¶ 4-5.)  As to Aaron Walsh's promotion to Camarillo Airport Manager, Plaintiff states that Walsh "possessed no management experience, less education, and no industry certification or credentials.  In fact, I had to show Mr. Walsh how to apply online for this promotion because he did not know how or where."[5]  (Kitaguchi Decl. ¶ 5.)  Likewise, as to Patrick Lammerding's promotion, Plaintiff contends Mr. Lammerding "had no experience in Airport Operations, was on a 6-months [sic] probation, and was a recent college graduate."  (Kitaguchi Decl. ¶ 9.)  Thus, Plaintiff attempts to demonstrate that Defendant hired lesser-qualified applicants because they were not Asian and over 45 years of age.

Plaintiff provides no basis for his knowledge of other applicants' qualifications, however.[6]  In opposing a motion for summary judgment, Plaintiff must produce more evidence than an uncorroborated declaration to create a genuine issue of material fact[7].  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996))); *see also Kennedy*, 90 F.3d at 1481 (applying same rationale to uncorroborated deposition testimony).

Nowhere is there provided, for example, resumes, certifications, or job applications of the other applicants.[8]  Nor is there any other evidence provided to suggest that Plaintiff did not become confrontational and ask inappropriate questions in the interviews.  In fact, the only document submitted by Plaintiff that could corroborate his testimony establishes that Plaintiff was *not* more qualified than other applicants, and that Plaintiff *did* become confrontational and abrasive.  In the

---

[4] Todd McNamee is the Director of the County of Ventura Department of Airports.  (McNamee Decl. ¶ 1.)  He has held that position since August 2005.  (Id.)

[5] In his deposition, however, Plaintiff states that Walsh had "lower certifications," not "no industry certification.  (Kitaguchi Depo. at 133: 23-24.)

[6] Defendant's objections to Plaintiff's declaration in this regard are sustained.  Unless otherwise indicated, all other evidentiary objections by both parties are overruled.

[7] It is indeed ironic that Plaintiff criticizes Defendant for submitting nothing more than a "self-serving declaration from Mr. McNamee."  (Opp'n at 12.)

[8] For example, the EEOC requested various information from Defendant, including applications and resumes of all applicants for each of the promotions at issue.  Jose Bernard, Defendant's personnel analyst, submitted Defendant's response on August 30, 2007.  (Kitaguchi Decl., Exh. D at 303-05.)  In it are references to attachments of Chris Hastert's, Aaron Walsh's and Patrick Lammerding's applications and work history.  (Id. at 304.)  Plaintiff, however, fails to attach any of these.  And to the extent Defendant does have relevant information in its possession that may shed more light on the qualifications of other applicants, Plaintiff has neither moved to compel such documents nor justify why this Court should afford a continuance in order to do so.  As reiterated at the hearing on this matter, it is Plaintiff's burden to produce evidence capable of creating a triable issue of fact regarding pretext; merely propounding requests for documents and being subjectively dissatisfied with Defendant's responses is insufficient.

partially submitted December 3, 2007 EEOC report, the assigned EEOC investigator notes that at least with respect to Mr. Walsh's promotion, the records provided by Defendant reflect his (Walsh's) qualifications for the job. (Kitaguchi Decl., Exh. D., Dec. 3, 2007 EEOC Letter.) Specifically, the letter provides, in pertinent part:

> Both you and Mr. Walsh met the minimum qualifications for the position. While you do have a Bachelor's degree that is in professional aeronautics and it is directly related to the position, your master's degree is in a field that is not directly related to the position.
>
> The job vacancy announcement for the position states that preference will be given to candidates with the broadest range of public airport experience. Records for Mr. Walsh show that he has been an Operations Officer since 2002 *so he has more experience and tenure in public airport operations with [Defendant] than you do. . . .* [Y]ou became confrontational and abrasive and asked questions demanding answers that were not appropriate for the interview situation. They stated that you demanded to know why the department would not hire you over other candidates and what qualifications the other candidates have that you didn't possess. One of the interviewers during this interview, Dorothea Forde, commented that you seemed abrasive . . . .

(Kitaguchi Decl., Exh. D., Dec. 3, 2007 EEOC Letter) (emphasis added).

What the Court is left with, then, is Plaintiff's own, unsupported opinion as to who was more qualified for the positions he applied to. Plaintiff's unsubstantiated claim that his qualifications were superior to the selectee's, standing alone, however, is not evidence that the proffered explanation for his non-selection was pretextual. *See Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir. 1987) (courts will not second-guess selection criteria used by an employer unless that criterion itself has a disparate impact on a protected class); *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact.").

Finally, Plaintiff contends that certain statements made by Mr. McNamee and Mr. Hastert are suggestive of a discriminatory animus, and therefore demonstrate pretext. For example, when interviewing for the Oxnard management position, Mr. McNamee said, "Congratulations on winning the high flyer award. What did you do, vote for yourself?" (Kitaguchi Decl. ¶ 7; Mot. at 4.) Yet, Plaintiff provides no evidence that this statement can in any way be linked to his age or race. It is a general statement and did not relate at all to Plaintiff's failure to get promoted. As such, it cannot be used as evidence of discriminatory animus, and therefore cannot establish pretext.

Similarly, statements by Mr. Hastert to Plaintiff and other employees that "you guys are just here sucking up a second retirement," and "you guys are just moseying along," (Kitaguchi Dep. 123:1-4), do not create a triable issue of fact regarding pretext. Although more than a mere "stray remark," as argued by Defendant, Hastert's and McNamee's comments were uttered in an "ambivalent manner and [were] not tied directly to [Plaintiff's] [promotion]. [They are] at best weak circumstantial evidence of discriminatory animus toward [Plaintiff]." *Nesbit v. Pepsico, Inc.*, 994

F.2d 703, 705 (9th Cir. 1993).

Finally, the Court reaches the same conclusion about Plaintiff's out of context and unsupported contention that Mr. Hastert and Mr. McNamee would make jokes about "Asians, Poles, and Mexicans." (Opp'n at 11; Kitaguchi Dep. 106:3-12.) Plaintiff provides no evidence as to what these "jokes" were, when they were said, or how they were anything more than ambivalent utterances.[9]

Thus, because Plaintiff has failed to raise a triable issue of fact regarding pretext, the Court GRANTS summary judgment in favor of Defendant on Plaintiff's Title VII and ADEA claims for failure to promote. The Court reaches this conclusion despite Plaintiff's reliance on the EEOC determination letter, which found, solely for the Oxnard management position, "reasonable cause to believe that [Plaintiff] was denied a promotion . . . because of his race . . . and his age 45. *See Mondero v. Salt River Project*, 400 F.3d 1207 (9th Cir. 2005) (noting that a determination from the EEOC is not a "free pass" through summary judgment).

### 2.  Training Courses

Though only tangentially addressed, Plaintiff contends that he was treated differently than white employees with regard to training opportunities. In particular, Plaintiff asserts that "he regularly applied to attend training courses that were necessary to maintain his job skills and obtain promotion opportunities." (Opp'n at 14.) According to Plaintiff, his requests were regularly denied, in favor of Caucasians under the age of 40. (Id.) Even assuming, in this context, that Defendant's failure to permit Plaintiff to attend these various training courses constitutes an adverse employment action, and assuming Defendant offered a legitimate reason for those actions, Plaintiff fails to adduce any evidence capable of creating a triable issue with respect to pretext. In fact, as to at least one relevant training program Plaintiff contends would have made his candidacy more attractive and for which he was denied attendance (the SWAAAE airport management short course), Mr. Hastert and Mr. Walsh did not attend until January 2006, *after* they were promoted. (Kitaguchi Decl., Exh. D at 304.) Plaintiff's own evidence in this regard proves to be of no assistance.

Further, to the extent Plaintiff attempts to create a triable issue by otherwise relying on the evidence discussed above in Section III.A.1., the Court adopts the same conclusions here.

### B.  Retaliation

On May 15, 2006, Plaintiff contacted the EEOC to complain about the three promotions he was denied. (Kitaguchi Decl. ¶ 17.) At some point "between May 2006 and August 2006," Plaintiff informed Mr. Hastert and his co-workers that he had contacted the EEOC, complaining that he was not promoted because of his age and race. (Id.) Plaintiff contends that "shortly after he notified his co-workers and supervisors that he had filed an EEOC Complaint," Defendant began a "witch hunt" to find reasons to terminate him, which included soliciting complaints against Plaintiff by airport tenants. (Opp'n at 18.)

---

[9] In fact, Plaintiff testified that he is otherwise unaware of derogatory comments made by Mr. McNamee in his (Plaintiff's) presence. (Kitaguchi Dep. at 106:13-16.)

By this point, a few airport tenants had made sexual harassment allegations against Plaintiff. Following an investigation into these allegations, Plaintiff was placed on paid administrative leave "until further notice," beginning July 18, 2006. (Kitaguchi Decl. ¶ 20.) Because Plaintiff was not provided a reason for being placed on administrative leave, he initiated pre-complaint filings with the EEOC on July 19, 2006, attributing the leave to retaliation for contacting the EEOC a few months prior. (Kitaguchi Decl. ¶ 20.) In light of the EEOC complaint, Plaintiff was re-interviewed on October 24, 2006 for at least one of the positions he applied. (Kitaguchi Decl. ¶ 27.) Plaintiff was not offered the position, and was ultimately terminated on December 15, 2006. (Kitaguchi Decl. ¶ 31.)

Retaliation claims made pursuant to Title VII and the ADEA are also analyzed pursuant to the burden-shifting framework prescribed by the Supreme Court in *McDonnell Douglas*. *See Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1143 (9th Cir. 2003). Under *McDonnell Douglas*, the burden of production first falls upon plaintiff to present a prima facie case of retaliation. *Xin Liu*, 347 F.3d at 1143. To do so, plaintiff must show that (1) he was engaging in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there was a causal link between the protected activity and the employer's action. *Id.* at 1143-44 (citing *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001)). Defendant may rebut the prima facie case by presenting a legitimate business rationale, which the plaintiff may then overcome by showing the employer's rationale is pretext for retaliation. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).

Plaintiff appears to argue that he engaged in protected activity by complaining of racial and age discrimination to the EEOC on May 15, 2006 and that Defendant retaliated against him by placing him on paid administrative leave on July 18, 2006, before ultimately terminating him in December of that year. Plaintiff was engaging in protected activity when he reported to the EEOC, and suffered an adverse employment action when he was placed on administrative leave and subsequently terminated.[10] Even assuming that these facts establish a prima facie case, Defendant has offered legitimate, non-discriminatory reasons for its conduct–namely, the seriousness of the sexual harassment allegations against Plaintiff, which after a full investigation, were found to have occurred as charged[11]–and Plaintiff has failed to establish that this reason is pretextual.

Indeed, the only evidence Plaintiff offers in support of pretext is the timing of his administrative leave. To that end, Plaintiff correctly argues that very close temporal proximity of

---

[10] Causation is slightly less obvious, however. Plaintiff states that he informed his co-workers and supervisors, including Mr. Hastert, of his May 2006 EEOC communications sometime "between May 2006 and August 2006." (Kitaguchi Decl. ¶ 17.) Plaintiff was not placed on administrative leave until July 18, 2006. Thus, if Plaintiff informed Mr. Hastert of his EEOC discussions after July 18, 2006, it would be difficult to argue that he was placed on administrative leave as retaliation for contacting the EEOC. Nevertheless, because the Court is obligated to draw all reasonable inferences in Plaintiff's favor at this stage, it will proceed as if Plaintiff has created, at the very least, a triable issue with respect to his prima facie case.

[11] As reflected in Plaintiff's dismissal letter, Plaintiff's inexcusable neglect of duty, discourteous treatment of the public, and acts inimical to the public service were among the reasons for termination. (McNamee Decl., Exh. 6.) Because these reasons appear to mirror those given when placing Plaintiff on administrative leave, the Court is able to conclude that they are merely more formal recitations of the underlying conduct alleged in the sexual harassment allegations.

the protected activity and the adverse employment action can serve as evidence of pretext. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069-70 (9th Cir. 2003). Standing alone, however, timing is insufficient. *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (courts shall not consider length of time between a protected activity and an adverse employment action "without regard to its factual setting."); *see also Mitchell v. Superior Court of Cal. County of San Mateo*, 312 Fed. Appx. 893, 894 (9th Cir. 2009) (upholding summary judgment where plaintiff "has not offered any evidence other than the 'timing' to rebut what otherwise appears to be an effort by an employer to confront ballooning discoveries regarding an employee's inappropriate behavior."); *Yount v. Regent Univ., Inc.*, 2009 WL 995596, at * 9 (D. Ariz. 2009) ("the evidence of temporal proximity is not a 'specific and substantial' indicator of pretext when viewed in isolation . . . .").

Here, the factual setting indicates that Defendant was attempting to respond to legitimate complaints of sexual harassment, filed by other business tenants at the airport. Defendant hired an independent investigator, who returned a detailed report cataloging various interviews of airport tenant employees and recounted several incidents of allegedly inappropriate conduct. (McNamee Decl., Exh. 7.) Ultimately, Plaintiff was terminated, but only after the investigation yielded results consistent with the sexual harassment allegations. Plaintiff has not offered any evidence other than his own, self-serving and uncorroborated declaration to rebut what otherwise appears to be an effort by an employer to investigate, and ultimately remedy, inappropriate and harassing behavior.

Moreover, there is no evidence that the relevant decision-makers–here, Mr. McNamee and Mr. Hastert–were aware of Plaintiff's alleged inquires with the EEOC prior to placing him on administrative leave. According to his declaration, Mr. McNamee "was not informed that Mr. Kitaguchi had contacted the EEOC regarding alleged race and age discrimination until weeks after he was placed on administrative leave in July 2006." (McNamee Decl. ¶ 14.) As to Mr. Hastert, though he was the supervisor who issued the letter placing Plaintiff on leave, as mentioned earlier, Plaintiff provides no indication as to when Mr. Hastert was aware of Plaintiff's initial EEOC communications. While the Court can give Plaintiff the benefit of the doubt with respect to his minimal burden of establishing a prima facie case, merely contending that he informed Mr. Hastert sometime "between May 2006 and August 2006," without any other evidence of retaliatory intent, is insufficient to show that Defendant's proffered explanation is unworthy of credence. To find otherwise would be to permit Plaintiff to proceed based on temporal proximity alone, which, as this Court has already explained, is improper. *See, e.g. Mitchell*, 312 Fed. Appx. at 895 (refusing to make an EEOC complaint tantamount to a get out of jail free card based solely on the timing of plaintiff's original EEOC complaint) (quotations omitted).

Thus, Plaintiff's unsupported and conclusory challenges to Defendant's reason for his administrative leave and ultimate termination are insufficient as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (affirming summary judgment for employer where the plaintiff "produced no facts which, if believed, would have shown pretext and thus tendered an issue for trial."); *see also Surrell*, 518 F.3d 1097, 1103 (9th Cir. 2008) ("Conclusory statements without factual support are insufficient to defeat a motion for summary judgment."). There is no evidence suggesting that Defendant acted adversely toward Plaintiff because of his communications and complaints with the EEOC; all of the evidence shows that Plaintiff's employment was affected by his inappropriate, sexually offensive behavior. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claim for retaliation is GRANTED.

## IV.   CONCLUSION

      For the forgoing reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety. Defendant shall submit within ten (10) days a proposed judgment consistent with the Court's findings herein.

**IT IS SO ORDERED.**

|  | -- | : | 00 |
|---|---|---|---|
| Initials of Preparer | RGN | | |